JOHN CAHILL, as Executor, etc., Appellant, *v.* MARY A. RUSSELL et al., Respondents.

Where words are used in a will fairly expressive of an intent that the executors shall sell real estate, but the import thereof is uncertain or equivocal, in determining whether a power of sale was intended, the fact that a sale is necessary in order to give full effect to the will may properly be permitted to have great weight in the construction of the instrument.

Formal words are not necessary to create a power, and if it appears by a will that a power of sale was intended, a sale will be supported, however obscurely the intention may be expressed.

B., by the first clause of her will, gave to a sister a legacy, and in the next clause gave to her the use of a portion of certain premises " until the sale and conveyance of said premises " by the executor as thereinafter provided. The will then gave various legacies, including one to the only heir at law of the testatrix, an infant grandson. There was no residuary clause. An executor was appointed, but no power of sale was conferred upon him in express terms. In a codicil executed after the death of the sister, the testatrix revoked the legacy to her, but did not change the second clause. By other codicils she revoked various legacies, and the last contained a clause giving the residue of her estate, real and personal, to her grandson. The legacies not revoked amounted to $13,500. The net personal estate of the testatrix at her death did not exceed $3,000. The said premises were valued at $12,000, and the testatrix owned an equitable interest in other real estate worth $2,000. In an action for the construction of the will, *held,*

that a power to sell said premises was intended to be and was given to the executor, in order to convert the same into personalty and render it available for the general purposes of administration.

(Argued December 7, 1893; decided December 19, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 19, 1893, which modified, and affirmed as modified, a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*C. Elliott Minor* for appellant. This is a proper case in which to ask the court for a judicial construction of the will. (Willard's Eq. Juris. 490; *Chipman* v. *Montgomery*, 63 N. Y. 221; *Whalrath* v. *Handy*, 24 How. Pr. 353; *Bowers* v. *Smith*, 10 Paige, 193–199; *Meserole* v. *Meserole*, 1 Hun, 66.) As shown by the will, it is evident that testatrix intended her executor to sell at least that portion of her real estate known as No. 227 East Fifty-second street. (*Campbell* v. *Bonshell*, 27 Beav. 325; *Kane* v. *Astor*, 5 Sandf. 457; *Jennings* v. *Conboy*, 73 N. Y. 234; *Warrenford* v. *Thompson*, 3 Ves. 573; *Dorland* v. *Dorland*, 2 Barb. 63; *Stewart* v. *Hamilton*, 37 Hun, 9; *Morton* v. *Morton*, 8 Barb. 18; *Gourley* v. *Campbell*, 6 Hun, 221; *Livingston* v. *Murray*, 39 How. Pr. 102; *Meaking* v. *Cromwell*, 5 N. Y. 136; *Morse* v. *Morse*, 85 id. 53.) If the modification of the decree by the General Term is to stand, it necessarily leads to a disposition of an interest in the Fifty-second street property which the testatrix never intended or contemplated, and would leave the heirs of Catherine Denny, who died during the lifetime of testatrix, entitled to a perpetual use and enjoyment of the top floor of the premises in question. By the language of the will Catherine Denny was to have the use of the top floor of the premises in question until the same was sold by the executor. (1 R. S. 751, §§ 1, 27; 2 id. 66, § 53.) It was proper to introduce evidence of the condition and value of the estate, not only for the purpose of showing that the language

used in reference to the sale of the Fifty-second street property was intended to be a positive direction to sell the same, but also for the purpose of showing the probable object of said power, as having been given for the purpose of enabling the executor to pay the legacies. (*Jennings* v. *Conboy*, 73 N. Y. 234; *Brill* v. *Wright*, 112 id. 129; *Livingston* v. *Murray*, 39 How. Pr. 102; *White* v. *Hicks*, 33 N. Y. 383; *Briggs* v. *Carroll*, 117 id. 288.) The General Term was in error in reversing the second and third conclusions of law, as found by the trial judge, and the decree following the same, to wit, that the power of sale given by the will of said deceased to the plaintiff was intended to and did work a conversion of the real property, 227 East Fifty-second street, into cash, for the purpose of paying debts and legacies. (*In re Gantert*, 136 N. Y. 109; *Powers* v. *Cassidy*, 79 id. 614; *Lent* v. *Howard*, 89 id. 169; *Monchrief* v. *Ross*, 50 id. 431; *Fisher* v. *Banta*, 66 id. 468; *Flannagan* v. *Flannagan*, 8 Abb. [N. C.] 413; *Betts* v. *Betts*, 4 id. 386.)

*George W. Cotterill* for respondent. The General Term was right in deciding that there was no implied power of sale. (1 Perry on Trusts, § 253; *Sweeney* v. *Warren*, 127 N. Y. 433; *Morris* v. *Sickley*, 133 id. 456.) Any effort by the executor or legatees to supply the above defects relating to time, place, beneficiaries and objects, by attempting to show that at the time the testatrix executed the last codicil the estate was insufficient to pay the debts and legacies, must fail. (*Brill* v. *Wright*, 112 N. Y. 136; *Hoyt* v. *Hoyt*, 85 id. 146; *Briggs* v. *Carroll*, 117 id. 292.) Even though there is a valid power of sale, if the legacies are not chargeable upon the land there can be no execution of the power for the purpose of paying legacies, and the finding to that effect is erroneous, and this Fifty-second street property should not be sold. (*Hoyt* v. *Hoyt*, 85 N. Y. 146.)

MAYNARD, J. Mrs. Broderick died in 1890 leaving a will and five codicils, the judicial construction of which is sought

in this action.   She was the owner of number 227 East Fifty-second street, New York city; and the principal contention of the parties involves the question whether a power of sale of this property is given to her executor.   In the will she bequeathed to various legatees sums aggregating $27,000, including a legacy of $5,000 to her only heir at law, an infant grandson.   There was no residuary clause, and in the last paragraph she appointed an executor, but did not confer upon him a power of sale in express terms.   The second paragraph of the will reads as follows: "Until the sale and conveyance of said premises by my executor as hereinafter provided, I give and devise unto my sister, Catherine Denny, the use of the top floor of the house and premises known as No. 227 East Fifty-second street, New York city, free of rent."

In the codicils she revoked legacies to the amount of $13,500, and in the last one, executed three days before her death, she inserted the following residuary clause: "All the rest, residue and remainder of my estate, both real and personal, and where-soever situated I give, devise and bequeath to my grandson, Joseph H. Brennan, absolutely forever."

The final result of her testamentary efforts was to bequeath general legacies to the amount of $13,500, and to give the grandson the entire residuary estate in addition to the legacy of $5,000.   All the legacies were given to near relatives except $1,000 bequeathed for charitable purposes.   Her net personal estate did not exceed $3,000.   The Fifty-second street property is valued at $12,000, and she owned the equity in a lot in 139th st. worth $2,000.   If the executor has authority to sell the premises in 52nd st. the legacies can be paid in full and leave for the residuary legatee a surplus of $1,500 and the lot in 139th street.

The Special Term decided that there was an implied power of sale given to the executor, but the General Term reversed the judgment in this respect, and the executor has appealed.

It is evident that the testamentary plan which the testatrix had formulated in her own mind contemplated the grant of a power of sale to her executor.   If the form adopted to express

her intention is ambiguous or incomplete the intent nevertheless should prevail.   Formal words are not necessary to create a power and, to quote the language of Sugden, "However obscurely in a will the intention may be expressed, yet if it appears that a power of sale was intended, a sale will be supported." (8th ed., p. 425, § 7.)   If the authority to sell is eliminated from the second paragraph it is difficult to give its provisions a rational interpretation.   The limitation which she placed upon her sister's right of occupancy pre-supposes the existence of the authority.   It is certain that she did not intend that Mrs. Denny should have the use of a part of the premises for life, or that it should vest in her and her heirs in fee ; and yet the one conclusion or the other must follow if the right of the executor to sell is denied.   The clause might well be paraphrased in the language of the testatrix without violence to its meaning so as to read : "I intend that my executor shall sell and convey my 52nd street property and until sold and conveyed by him, I give the use of the top floor to my sister, Mrs. Denny."   There is scarcely room for doubt that this was the thought which she attempted to express, and she put it in words which do not differ from it in legal significance and effect.   It is too narrow a view of this clause to say that its principal or primary object was to make a temporary provision for her sister.   What was in her mind apparently when she undertook to frame it was the disposition of the entire premises.   She knew that if her will was to be carried out they must be sold and converted into money in order to pay the general legacies, and, anticipating that some period of time must necessarily elapse after her death before the sale could be had, she desired that her sister might occupy a part of the property meanwhile free of rent.   The provision for the sister was incidental to the main purpose which she wanted to accomplish.   In the preceding paragraph she had given Mrs. Denny a legacy of $3,000.   It appears from the second codicil, executed eighteen months afterwards, that the sister had died in the meantime, and in the codicil she revokes the legacy and makes other disposition of the money

bequeathed; but the second paragraph is not touched. It may be assumed that it would also have been revoked if it had been regarded as containing nothing more than a provision for the sister.

If the phrase, " as hereinafter provided," had not been interpolated into paragraph two there would have been no ground for controversy. But the sense is complete without these words, and they may be rejected as redundant. They must be so regarded if their retention will have the effect to render the entire provision nugatory. Whether qualifying or descriptive they must be subordinated to the main purpose of the author of the paragraph. It is difficult to determine exactly what office they were intended to perform. They may be construed as indicative of an intent to confer express authority to sell in some subsequent clause, but which was unintentionally left out. They may have reference to the time and manner of sale, and other directions as to the exercise of the power which the testatrix then expected to give, but which she afterwards decided to omit. Or they may be restricted in their application to the subsequent appointment of the executor, who had not yet been named, and for whose appointment provision was thereafter to be made in the instrument. It is noteworthy that whichever view is taken of the meaning of this phrase the cardinal question of intent is not disturbed. They all assume that a sale was intended and are consistent only with the existence of a power to effect it. It is urged that this phrase may have been used because the testatrix intended to make a codicil in which a power of sale would be conferred, and that she subsequently changed her mind in this respect. But such a presumption is not admissible. The will at the time of its execution must be assumed to be the completed testamentary act of the maker. It is not to be presumed that she then intended to supplement it by further directions for the disposition of her estate, but rather the contrary. The execution of a codicil is indicative either of a change of circumstances or a change of intent occurring after the execution of a will, which leads to a corresponding change in its pro-

visions. This is strikingly exemplified in the case at bar. The codicils are mainly devoted to a revocation of general legacies. The amount thus bequeathed is cut down one-half. It is evident that after the will was made the testatrix discovered that she had overestimated the value of her estate, or that there had been an unexpected shrinkage in its value, and she reduces the amount given in general legacies accordingly.

In determining whether a power of sale was intended, it is important in a doubtful case to ascertain whether the general scheme of the will seems to require it. Here, if the power does not exist, the legacies must abate to the extent of nearly four-fifths of their amount. While a mere deficiency of personal estate for the payment of legacies will not of itself be sufficient to raise a power of sale, yet where words are used fairly expressive of an intent that the executor shall sell, but their import is uncertain or equivocal, the necessity of a sale, in order to give full effect to the will of the testator, may properly be permitted to have great weight in the construction of the instrument.

We, therefore, think the decision of the learned judge at special term was right in holding that the executor had power to sell, and it is not important to determine whether the power is imperative or not. The executor is seeking to enforce it, and when executed the real property will be converted into personalty, and thus rendered available for the general purposes of administration, including the payment of debts and legacies. (*Erwin* v. *Loper*, 43 N. Y. 521; *Matter of Hood*, 85 id. 561; *Glacius* v. *Fogel*, 88 id. 434; *Matter of Powers*, 124 id. 361; *In re Gantert*, 136 id. 109.)

The judgment of the general term must be reversed, and that of the special term affirmed, with costs to the plaintiff and the infant defendant Brennan in this court and at general term, to be paid out of the estate.

All concur.

Judgment reversed.